Call the last case. Give us a moment while we get ready. All right. For the epilogue, who are you? Who are you? My name is Jan Hughes. I'm an Assistant Attorney General. Epilee. Good morning, Your Honors. Stephen Pick, Legal Assistance Foundation of Chicago. On behalf of Plankton Epilee Laurie Burris, with me at the council table is Richard Cozzola, also from the Legal Assistance Foundation. And Mr. Pick, will you be doing all the arguing? Yes, I will. Okay, great. Each side has 15 minutes, but if you go over, we don't really look at our watches. We've done a lot anyway. The other two moved quite along very well so far this morning. But I can assure you we've read the briefs. We've looked at the pertinent portions of the record. We've pulled our own cases, as we always do. So we'd appreciate it if you get your strongest points any time you're ready. Thank you. Good morning, Your Honors. This case really is a fairly discreet issue regarding the validity of the DCFS regulation that defines neglect. And that regulation says neglect is environment injurious to the health and welfare of a child. The case boils down to the argument that a similar phrase was removed from the ANCRA statute 30 years ago. And therefore, 20 years later, DCFS could not promulgate this regulation. If you know, back in 1980, when that phrase, injurious environment, was removed from ANCRA, was it also removed from whatever passed for the definition of neglect in the Juvenile Court Act? The definition of neglect in the Juvenile Court Act contains a similar phrase, and that came a few years after it was removed from the ANCRA statute. So in the Juvenile Court Act of 1987, that act, the 1987 act, added the phrase injurious environment as part of the definition of neglect. Is that correct? That's correct. When they did that, though, they didn't go back to ANCRA and add it to ANCRA. Is that correct? They did not. Okay. And frankly, I'm not sure why. I think when we look at the comments of the legislative sponsor when the phrase was taken out of the statute in 1980, his concerns were over litigation, I think ambiguity, concerns about what that phrase standing alone would mean. It seems rather odd that seven years later the legislature would have no concerns about putting that in the Juvenile Court Act, where the effects of a neglect finding can be, I think, far more devastating than those of the ANCRA. So it's an oddity, that's for sure. But we also know that before it was removed from the ANCRA, the exact phrase was in the Adoption Act as a grounds of unfitness. So we see the legislature using that phrase without further explanation, simply that phrase standing alone twice, in the Juvenile Court Act and the Adoption Act, but yet taking it out of this act. And I think when we look at the concerns of the legislative sponsor about the phrase standing alone not having any meaning or maybe leading to confusion or litigation, I think that we have to see that DCFS as an agency with the authority to promulgate regulations implementing ANCRA has the authority to implement this regulation. Because it didn't just use the phrase environment injurious or injurious environment. It provided many examples of what that means. And so often agencies can do what the legislature cannot in detail. So we have the, I'm sorry, go ahead. The, as to the Adoption Act's use of the phrase injurious environment, when was that put in the Adoption Act, if you know? That was put in the Adoption Act. It was before, hold on one second. That was put in the Adoption Act in 1967. Okay, so it stayed in the Adoption Act from 67 to today's date. Correct. Whereas it had been removed from ANCRA in 1980. When it was removed from ANCRA in 1980, if you know, did it stay in what it was, again, not the Juvenile Court Act, but whatever was passed for the Juvenile Court Act in 1980. So could somebody still be found to be responsible for neglect in 1980 without it being used in ANCRA? Well, it wasn't in the Juvenile Court Act until after it was removed. Right. Okay. Very good. That's my question. Okay. Very good. I'm sorry. I'm sorry. The argument here is that because it's not in ANCRA. Yes. The ANCRA should not be notified of this particular, Ms. Burris's. Correct. And that's because it was removed in 1980. However, after they removed it in 1980, or just whatever they did with it in 1980, it's in the act, Juvenile Court Act in 1987. Correct. And it never left the Act, the Adoption Act, since its inception in 1967. That's right. That's right. Okay. And so the question is a statutory interpretation case. What are we to do with that? How are we to read that? And I think it's, well, go ahead. I will tell you that you should read that to mean that the legislature took it out, and frankly it may have been at DCFS's urging, and it was never revisited. And I think that's all you can take that to mean. I just cannot believe that 30 years after that, the legislature, and this is what we're talking about is the intent of today's legislature, that the legislature today doesn't think that an injurious environment is neglect. Well, they said that they did in 1987. So since 1987, subjecting a child to an injurious environment is a basis to find a parent not guilty but liable for neglect. And it's been the law since 1987. Correct. Okay. And I think that it is implicit in the ANCRA that that, too, is a definition of neglect. And I think that it's clear when we look at Section 716 of the ANCRA that says when someone is challenging an indicated finding of neglect or abuse, if there has been a court finding of neglect or abuse, that person is not under the ANCRA entitled to a hearing. And so we know that the legislature is giving value to findings that are made under the Juvenile Court Act. And, in fact, in this case, two years ago this court found that Ms. Burris did neglect the child under the Juvenile Court Act. And, therefore, if this is a valid regulation, she shouldn't have been entitled to a hearing, and that was what the motion to dismiss was about. Going back, so when this court two years ago affirmed the circuit court's findings in the torture of her first child, the circuit court found that the abuse or neglect was inflicted by the parent in this case, the natural mother. Yes. In doing so, wasn't Ms. Burris at that time referred under ANCRA? Wouldn't her name be found then under ANCRA because of the torture of her first child? Well, yes. Okay. So why are we here again today if she's already in ANCRA under 1? Do we need her under 2? How does that work? She says she's found responsible for the torture of her first child. Yes. By the circuit court, this court affirms, although in that case she didn't appeal it, so it's affirmed by some other person, the natural father, I think. Wasn't she since this time, since the circuit court's order in the torture of the first child, isn't she been found in ANCRA? So if somebody ran to the ANCRA database. Yes, she is. Okay. When the director affirmed the indicated findings, she has been on the state central register for neglect. And the issue in front of us today is should she be, should this additional finding of neglect based on injurious environment as a second child, who she didn't torture, should that be on her? Is that the issue here today? You know, I'm sorry, Your Honor, but I believed that this court's decision two years ago, it was about this child. It was, but not about her. Right. So this case involved the natural father. Yes. Who did not torture the child. The appeal was on his. But it involved that first child. Did it not? Or did it involve this child? It involved this child. Oh, I'm sorry. I'm about to reread that. This child. Oh, you're right. I'm sorry. That's okay. I just want to make sure I'm following. No, you're good. But that case was about the neglect of this child. This court found there was no abuse, that it was neglect of M.W. And this case is also about the neglect of M.W., which is why I think Section 716 of the ANCRA comes into play. And it says if there has been a judicial finding of neglect, then the person challenging the indicated finding is not entitled to a hearing. So the legislature in ANCRA is acknowledging neglect findings made under the Juvenile Court Act. So, you know, I think that that diminishes the fact that 30 years ago a single phrase was omitted, was deleted from the ANCRA. The other argument that we have made is had, I think that there would be more What you're saying essentially is since the court already made the finding, we don't even need to reach this question. The case should have been dismissed. That's correct. Case over. That's correct. That's very clear in that provision in the ANCRA that it should have been dismissed. So we need not concern ourselves with the removal of this language from the ANCRA. I don't believe so, no. And obviously I think what brought this up was she made a legal argument that she shouldn't have been indicated at all under allegation number 60. Well, that, I suppose, raised the legal argument. So the hearing went forward on that alone and the ALJ made a decision, which the director reversed. Right. But, you know, I think that and throughout the Eppley's brief, the point is made, it was taken out of the statute. It was taken out of the statute. The legislature intended to change the statute. No one can disagree with that. No one can disagree with that 30 years ago. But what did they do? They took a single phrase because it couldn't be and wasn't, I suppose, defined by the legislature. And the legislature, the sponsor at least, indicated it would be revisited. When we can make it more clear, we'll come back to it. I don't know if the legislature forgot. It was just never done. Twenty years after that, DCFS promulgates this regulation and unfortunately, I suppose at this point, uses a similar phrase. But DCFS did more than just use a phrase. It defined in detail what that means. And some of the things that that means is placing a child in an injurious environment to its health and welfare, placing a child at substantial risk of harm, a parent's behavior poses significant danger to a child's safety, the death of another child in the home, the danger of physical injury. Can anyone really say that those would not be neglect under the ANCRA, that the legislature intended for those not to mean neglect? I think that we're hard-pressed to come to that conclusion because I think that it is elevating form over substance and using titles rather than the substance of a provision. And I believe that case law has told us that that is simply not the way to interpret a statute. Other arguments are made in my brief, which I know that you've read and I will rely on significantly. We feel that just the plain language of the ANCRA doesn't even allow us to get to the history of the provision. But obviously the main point has become, what does the deletion of that phrase mean? And DCFS believes that it does not mean anything to the validity of this regulation. And we would ask this Court to reverse the Circuit Court's decision. Thank you. Thank you. Mr. Pick. May it please the Court, I'd like to start by responding to certain comments made during the appellant's argument. First, I'd like to clarify what might be a confusion about the history of the case under the Juvenile Court Act concerning the plaintiff's first child. That child was adjudicated abused or neglected, but there was no finding that the plaintiff in this case,  Well, reading from the Circuit Court's findings in that case, at page 33, the Court finds that the minor is abused and neglected as defined in the Juvenile Court Act. The Court finds and makes these findings by clear and convincing evidence that the conduct towards the minor violates citation, neglect, lack of care, citation, neglect, injurious environment, and citation, abuse, substantial risk of physical injury. And the Court further finds, with respect to those findings, specifically that the perpetrator, strike that, of that abuse or neglect was inflicted by the parent, in this case, the natural mother. It then went on about the sexual abuse inflicted by the paramour, or whatever you want to call him, the fellow doing the 20 years. Well, at least in contrast in the current case, when we're talking about an injurious environment, there was no overt act at all by the natural mother in that case. But the purpose of my case is not to badmouth Ms. Burrs, although it's horrific. The purpose of it is how did this case come up when, based on the first child, based on that Circuit Court's finding of neglect, that she was a perpetrator of whatever it was, she would have been referred then, right, and under anchored, and that's a database, isn't that? Yes. So anybody from that day on, after the Circuit Court made that finding, could go to the database, normally social workers trying to help children, would be able to find a record of Ms. Laurie Burrs, and she'd been found liable for neglect and abuse. That's correct. Okay. But to be fully candid with the court, the ANCRA provides that, and DCFS and its regulations, provides for specific periods of time that those indicated findings, in other words, that one's name remains on the database, that for a certain period of time, depending on the allegation, the name is removed. Five years, is that correct? Five years is the standard amount. Obviously it goes up for, I believe, for sexual abuse, it's 50. Okay, but normally, and again, we don't know in this case, because Ms. Burrs' name would have been removed, if not for the new order on the new child, where the new child was not harmed in any way by Ms. Burrs. That's correct. Wow. I'd also like to respond to counsel's suggestion that in promulgating its regulation in 2001, DCFS listed specific examples of environment injurious. In fact, that's not correct. The specific examples listed in Allegation 1060 are all prefaced by the phrase, examples of incidents that place the child at substantial risk of physical injury include, but are not limited to the following, and then the list of examples. Substantial risk of physical injury is found in the definition of abuse in ANCRA. So these are not, at least by the plain text of the regulation, these are examples of substantial risk of physical injury, not environment injurious. Again, to be fully candid with the court, just this month, I believe, DCFS adopted a new regulation amending 1060, which does give in context some what it considers examples of environment injurious. But nevertheless, the argument that somehow it was in the intention of Representative Peters in 1979 to leave it to the department to clarify what environment injurious meant and the proposition that it did clarify it is not the case. Environment injurious has just been sitting there by itself without any specification for the 30 years. Well, until at least 1987 when it was added to the Juvenile Court Act. It was added in 1987, was it not, Mr. Pitt? I believe it was actually added in 1982. Okay. Well, what more could they do? So it was added in 1982. The idea that injurious environment could be a basis to find neglect was added by our state legislature in 1982, but it was not added apparently to amend ANCRA at that time. Correct. Correct. What's the problem? Since the people who were found since a trial court can find injurious environment or the neglect based on injurious environment since 1982, and that then can be found to be reported. The argument is that even after that, ANCRA should not be able to report that, even though there's a judicial finding of neglect based on injurious environment? ANCRA at its essence creates this list, this database that we've been talking about. It is rational for the General Assembly to conclude that it wants a narrower definition of who can be put on the list and a more expansive definition in the Juvenile Court Act to give the circuit court maximum flexibility when it has a petition before it to adjudicate a child neglected or abused. Environment injurious is incredibly broad. I'm going back to what you just said, Mr. Pick. So in 1980, they said clearly, as they conceded clearly, the legislature did not want ANCRA to be relying on injurious environment reporting it, to accept this in and put somebody's name or indicate it or however you want to phrase it. To put somebody's name in the ANCRA database based on strictly injurious environment. That was wrong. They shouldn't do it. However, the legislature then looked again at the issue of injurious environment, you say in 1982, and say that can now be, two years later, that can be a basis to find neglect. Yes. Why then would we hold that defining in 1980 injurious environment alone cannot be the basis to send to ANCRA, would still control over the idea or trump the 1982 act, two years later when the legislature looked at the same issue and says, okay, injurious environment is an appropriate consideration and can be the basis for finding neglect. Wouldn't the addition in 1982 of injurious environment to the definition of neglect trump the withdrawal of it under ANCRA? No, because we're dealing with two separate self-contained acts here. The Juvenile Court Act and the Abused and Neglected Child Reporting Act. The General Assembly has chosen, for its reasons, to enact a definition of neglect in the Juvenile Court Act and a definition of neglect in the Abused and Neglected Child Reporting Act. It could have quite simply cross-referenced, which is done in many statutes. We use the definition of, we use the standards, for example, for custody of a child under the Parentage Act. It just cross-references the Marriage and Dissolution of Marriage Act. But it didn't do that. And we have to presume that there's a reason. Going back to ANCRA then, isn't ANCRA required, the courts, everybody involved in this area, required to maintain a database of all persons found to have been, again, liable for neglect, right? So when there's an issue when a mom or a dad or whatever, paramours, are found to be neglectful of a child, isn't ANCRA obligated to receive a report to that effect and then to report it, to maintain a record of that for however long the statute says? No. The judgment of the circuit court with respect to Ms. Burris's first child and her second child is there and will be there until the state government record says we can destroy those judicial records. That's there. And DCFS has its own files on Ms. Burris. But with respect to this database, whatever form it takes, a computer sitting on a desk somewhere, in order to be on that list, the conduct must fall within the definitions specifically in ANCRA. ANCRA creates the list, not the Juvenile Court Act. But, counsel, what do we do with the provision in the administrative code that provides that the administrative law judge shall dismiss an appeal if the court has made a judicial decision? And it's clear that the court has already made a judicial decision in MRA-MW. We just ignored this decision. It was based on an injurious environment. What do we do with that decision? Well, that raises a separate question, and the question would be, assuming one accepts my construction of neglect a child in ANCRA and not to include environment injurious, we have a regulation applied, if we apply that literally, that does not allow an appeal to get off that list, to get off the database, for a finding that's not contained within the statute that creates the database. So I think that raises constitutional or due process issues, which we haven't briefed. But we're considering the same issue, whether or not there's an injurious environment, correct? Not under ANCRA. There is no neglect that's solely based on being in an environment injurious to the child's welfare. Okay. But you still haven't explained to me. We just ignore MRA-MW. We act as though the decision was never made. Ms. Burris's name cannot be put on the list. That's our position. If that, though disrespect, is intended to the findings of the trial court, those were upheld. But you're saying since the appellate court decision wasn't based on ANCRA, we can't use it? That's correct. Because the appellate court decision is based on the Juvenile Court Act definition of neglect, and we don't quarrel with that. So then you don't object to ANCRA receiving the information or containing in her database the information that she was found to be neglectful towards MW, this child? Well, speaking realistically, having represented Ms. Burris in the Juvenile Court action, we know that there's a voluminous file maintained by DCFS that contains all of this information about her and about MW. That's not going away until DCFS is permitted to destroy its files. But she cannot be put on that list. DCFS is the agency. The entry of a court order fining her of neglect in this case, the MW case, her name should not be on there. It should not be on that list. It can be all over the rest of DCFS's databases, which it obviously is, but not on that list. Well, again, if this was raised below, right, the argument was you don't have a right to appeal this finding. If a court found it, and a circuit court found it, and then we affirmed the circuit court in this case, the MW case. If you chose not to brief it to fight that, that's your decision, not ours. We're not bound by some idea that you chose not to fight that. So on this due process argument or conflict between the branches, if you chose not to brief that, why would we fine for you if you chose not to do that? It is before us, is it not, the issue of their argument, the Attorney General's argument, that subsection says that you don't have a right to appeal this if there's a court order fining it, meaning that you already had due process. The argument there obviously being if a court, if the mother or father has had enough due process where a court, a circuit court of the state of Illinois, would fine, make a judicial fining of neglect or abuse, in this case neglect of any kind, a jury's environment of any kind, that finding cannot be appealed, cannot be prevented from going to ANCRA based on any appeal. That's, right, that's what it means? Yes, yes. Okay. Well, why on earth wouldn't we fine follow that? First as to whether the question's before the court. We can see the administrative review law provides that the court can consider any matter, any question of law of fact raised by the record, the administrative record, and to the extent that that question is raised, this court can consider that. However, what would, in reviewing is the final administrative decision of the director of DCFS, Erwin McEwen. His decision is based on the rationale that environment in juries is a legitimate category of neglect under ANCRA. The, if, to the extent that the court, that this court may be considering ruling in favor of, or consider the possibility that Ms. Burris is not entitled to an appeal, purely as a procedural matter because of the regulation cited by Justice Neville, whether or not, regardless of whether injurious environment is in the definition of neglect, we would request the opportunity to brief that supplementally. We'll consider your request, and we'll get back to you in writing on it. Yes. As to, though, we don't, I don't know this, because I don't know how this works, frankly. So let's assume, as far as you know, are there incidents in ANCRA that are not the subject of court orders? So is there, is the concern that you have, not Ms. Burris, in general, certainly the interest in 1980 by Representative Senator Peters was that some organization, DCFS, could make an internal finding of an indication of injurious environment. And that would, apparently, just based on that, without any judge saying it's so, end up in ANCRA. Yes. And can that still happen? Yes. So ANCRA, as a database, will have things which no court has reviewed yet. Yes. DCFS, when it comes across a situation in which there's an environment it considers the child to be an environment injurious, it can, under its current policy, indicate the person as the result of their administrative investigation. It has discretion to seek, ask the state's attorney to file a petition under the Juvenile Court Act. But I think it's fair to represent to the court that very frequently it doesn't do that. Right. It just indicates the person and that it may offer that person what we call intact services. Yes. But that would be sent to ANCRA. Yes. You would be on the list. Okay. Well, again, just asking again, wouldn't that be a better case to bring in front of us to say, this lady was just indicated, no judges agreed to this, there's no findings, anyway, of abuse or neglect, and that she's been reported to ANCRA. And that can't be. And I would think, just talking for myself, if there are cases out there like that, that would seem to me to violate the 1980 taking it out of injurious environment as being the sole basis of ANCRA, a report to ANCRA. But if it's in a court, again, the theory being, not that we're perfect, because we are certainly not, that's why we have courts of appeal, is that you have due process. And you don't have sufficient due process based on just these mere findings. Yes. It would be, it would crystallize the issue extremely clearly if we did not have to deal with the, I'll concede that point. Why don't you find a case, Mr. Pick? I know your people are, they work very hard. And they've got, you handle lots of cases, and God bless you, and all of your people, too, even on these tough cases with these, well, this is terrible. But your people do wonderful work. It would just seem to me that, I bet there are cases out there like that. Yes. But where the, a judge finds neglect in an appellate court, the firms are finding neglect to say now that can't be sent to ANCRA, well, gosh, it's hard to do. I'd like to make one final point. Take your time. And that is, as we indicated in the brief, DCFS has a remedy. It's part of how our system of government works. When DCFS creates its list under ANCRA, when it goes out to protect the children of Illinois, it can come back to the General Assembly and say we don't have enough authority. We're finding situations in which we think a child is abused or neglected, but we can't, although we can take them into juvenile court, we can't put them on ANCRA because it doesn't contain an environment injurious. And then the General Assembly, as the representatives of the people who make the laws that the executive branch enforces, can make the decision, which is whether or not to broaden the definition under ANCRA to include environment injurious. That's respectfully where the remedy lies and not with this court. They never do what we ask. That's just my thought. We were actually chided all the time by the Supreme Court to never do that. We were told we're not legislators, we're not to suggest that we're not lobbyists. They really hate it, I'll tell you what. They don't like that. I'd like to make just one final example. Environment injurious is such a vague concept by everyone's admission. It's hard to perhaps conceive of a situation in which one might say that a child is being subjected to an environment injurious, but not where there is a lack of care, lack of appropriate care. This case presents, with respect to MW, one such situation. There was no suggestion at any point that MW was not receiving appropriate care. It was purely based on the theory of anticipatory neglect that the case was taken into juvenile court. But again, going back, your organization certainly represents, again, many hundreds of people who I'm sure just have that problem. It's a problem. It's a temporary thing. These things occur. Whereas, it's Ms. Burris. Ms. Burris, paramore, tortured this child horribly. She knew about it. She cooperated with him to do that. She lied to the police to allow him to do it some more. He did 20 years, which is too light of a sentence. And under a case called People v. Barbara Peters, she could have, on the facts of it, appeared to be successfully prosecuted for the same crimes and done at least the same amount of time. And yet none of that happened, and that's the state attorney's lookout, not ours. The police department. But again, well, go ahead. Well, I wanted to give the example of a situation in which a child is cared for appropriately by their parents. The parents help the child with her homework, give her piano lessons, but dad happens to smoke a pipe and mom smokes cigarettes.